IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| QUINTEZ TALLEY | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| MAJOR CLARK, CAPTAIN MASICELLINO, WARDEN CYNTHIA LINK, LAURA BANTA, PA. DEPT. OF CORRECTIONS, PAUL, RN, RICHARD DOYLE, R. LADONNE, UNKNOWN SHIFT COMMANDER, UNKNOWN EXTRACTION TEAM and UNKNOWN PSYCHIATRIST | : | NO. 18-5315 |

## MEMORANDUM OPINION

**Savage, J.**                                                                           August 5, 2019

Plaintiff Quintez Talley, a prisoner proceeding *pro se* and *in forma pauperis*,[1] filed this civil action asserting claims under the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 1983. He also brings various state law claims. He has sued the Pennsylvania Department of Corrections ("DOC") and several of its officials, including Major Gina Clark, Captain David Mascellino, Deputy Superintendent Laura Banta and Psychological Services Specialist Robert Ladonne.[2]

---

[1] Order Granting Pl.'s Mot. for Leave to Proceed *In Forma Pauperis* (ECF No. 9).

[2] Talley also sues "(RN) Paul," "Richard Doyle," "Unknown Shift Commander," "Unknown Extraction Team," and "Unknown Psychiatrist." The DOC is unable to identify these individuals. Consequently, they are not parties to the motion to dismiss. However, if the court grants another defendant's motion to dismiss, the court may, on its own initiative, dismiss claims as to non-moving defendants if the claims against the non-moving defendants suffer from the same defects raised in the moving parties' motions. *Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 148 (3d Cir. 2011) (quoting *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) (stating that the court may *sua sponte* dismiss a claim as to non-moving defendants where the inadequacy of the claim is clear)). A claim against a non-moving party may be dismissed if the claims against all defendants are "integrally related" or where the non-moving defendants are in a similar position to the moving defendants. *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993). Therefore, to the extent the deficiencies cited in the motion to dismiss also apply to these defendants, we consider them.

1

The defendants have moved to dismiss the complaint for failure to state a claim. They have also asserted qualified immunity and sovereign immunity as to the state claims. Because Talley has failed to state a federal claim, we shall grant the motion and dismiss those claims, and decline to exercise supplemental jurisdiction over the state law claims.

**Background**[3]

On January 3, 2018, Talley was housed in a Psychiatric Observation Cell (POC) at the DOC's State Correctional Institution at Graterford.[4] Mascellino informed Talley that he was being returned to the Restricted Housing Unit.[5] Talley responded that he was suicidal and had not spoken to mental health professionals Ladonne or Doyle.[6] Mascellino replied, "We've got something for that – we've brought the chair and waist restraints back!"[7] Talley advised Mascellino that DOC policy requires that suicidal inmates remain on close watch until evaluated by a psychiatrist.[8] Nonetheless, an extraction team was assembled to remove him from the POC and place him in a camera

---

[3] The following facts are taken from the complaint and are deemed true for the purposes of the motion.

[4] Compl. ¶¶ 4, 6. A POC is "[a] cell located in the Infirmary area of the facility that is used to hold inmates who are mentally decompensating to the point where they are considered a danger to themselves, other inmates, and/or property. These cells provide a means of retraining the inmate, if necessary, and allow for constant supervision of the inmate to be maintained in order to treat the inmate." *Id.* ¶ 7 (quoting DC – ADM 13.08.01, Glossary).

[5] *Id.* ¶ 8.

[6] *Id.* ¶ 9. *See also id.* ¶ 5.

[7] *Id.* Mascellino "made it EXPRESSLY" clear that he was acting upon the orders of Clark, Banta and Link. *Id.* ¶¶ 24, 25.

[8] *Id.* ¶ 10.

cell in the Diversionary Treatment Unit (DTU).[9] Talley allowed himself to be handcuffed and escorted to a DTU cell by the extraction team.[10]

Before entering the cell, Talley was instructed by the extraction team lieutenant to face the wall.[11] After he did so, another member of the team charged him with a shield, lifting him off his feet and slamming him into the bed.[12] Talley was placed in a waist restraint belt, but freed himself.[13] The extraction team then placed him in an intermediate restraint belt.[14] That night Talley attempted to hang himself.[15] He was escorted to the dispensary to speak to "medical" about his suicide attempt.[16] Talley was returned to the POC.[17] There, he was again placed in an intermediate restraint belt that had not been ordered by the committing psychiatrist.[18]

Talley bases his claims on three sets of acts and omissions. First, he alleges that all defendants discriminated and retaliated against him under the ADA; violated his rights under the First, Eighth and Fourteenth Amendments; and committed the tort of "coercion"[19] when Mascellino, at the direction of Clark, Banta and Link, transferred him from the POC without providing him the opportunity to speak to a mental health

---

[9] *Id.* ¶ 11.
[10] *Id.* ¶ 12.
[11] *Id.* ¶ 17.
[12] *Id.*
[13] *Id.* ¶¶ 12, 16.
[14] *Id.* ¶ 16.
[15] *Id.* ¶ 21.
[16] *Id.*
[17] *Id.* ¶ 22.
[18] *Id.* ¶ 23.

[19] Pennsylvania law does not recognize coercion as a cause of action. *Benigno v. Flatley*, No. 01-CV-2158, 2001 WL 1132211, at *1 (E.D. Pa. Sept. 13, 2001).

professional.[20] He alleges that Doyle and Ladonne violated the Eighth Amendment and committed medical malpractice and negligence when they released him from the POC without evaluating him.[21]

Second, Talley claims that Paul and the Unknown Extraction Team Defendants violated the Eighth Amendment and committed the tort of assault and battery when one assaulted him with the shield and the others failed to intervene or report the assault.[22]

Third, he contends that Mascellino, Clark, Banta, Link and the Unknown Extraction Team Defendants violated the Fourteenth Amendment and the Pennsylvania Constitution's "Cruel Punishment" clause[23] and committed federal conspiracy when they placed him in restraints without providing prior notice or an opportunity to object.[24] He contends that the Unknown Shift Commander violated the Eighth and Fourteenth Amendment and Pennsylvania's "Cruel Punishment" clause when he instructed Lieutenant McClain not to remove the intermediate restraint belt after Talley was returned to the POC.[25]

Talley seeks compensatory and punitive damages. He has withdrawn his demand for declaratory and injunctive relief.[26] Mindful of Talley's *pro se* status, we construe all claims as also having been brought against the DOC.

---

[20] *Id.* ¶ 25. The ADA claim is against these defendants in their official capacity only. Pl.'s Response at 2 (ECF No. 11).

[21] *Id.* ¶ 26.

[22] *Id.* ¶ 27.

[23] PA. CONST., art. I, § 13.

[24] Compl. ¶ 28.

[25] *Id.* ¶ 29.

[26] Pl.'s Response at 8.

Defendants argue that Talley fails to state an ADA claim against the DOC. They also contend that none of the alleged acts or omissions give rise to a § 1983 claim. They assert qualified immunity as to his federal claims and sovereign immunity as to his state claims.

**Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), the court must first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. The court next determines whether the facts alleged, if proven, show that the plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). In making this determination, all well-pleaded allegations of the complaint must be accepted

5

as true and interpreted in the light most favorable to the plaintiff, and all inferences must be drawn in his favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

### Analysis

*ADA Claims*

The ADA makes it unlawful for public entities, including prisons, to discriminate against the disabled in providing services, programs and activities. *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015) (citing *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)); *Chisholm v. McManimon*, 275 F.3d 315, 325 (3d Cir. 2001) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)). To state an ADA claim, a plaintiff must allege "that he is a 'qualified individual with a disability' [and] that he was excluded from a service, program, or activity of a public entity . . . because of his disability." *Disability Rights N.J., Inc.*, 796 F.3d at 301 (quoting 42 U.S.C. § 12102(1)(A)). Mental illness is a disability under the ADA. 42 U.S.C. § 12102(1)(A).

Talley asserts he was denied the opportunity to speak to a mental health professional prior to his removal from the POC. He does not claim that he was denied treatment "because of" his mental health issues.[27] The ADA does not cover such a claim. *Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley does not claim that he was excluded from any program on the basis of his disability. Rather, he claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions.") (citing *Bryant v. Madrigan*, 84 F.3d 246, 248 (7th Cir. 1996)); *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."), *overruled*

---

[27] *See* Compl. ¶¶ 9-13.

6

on other grounds as recognized by Horton v. City of Santa Maria*, 915 F.3d 592, 599-600 (9th Cir. 2019). Hence, we shall dismiss Talley's ADA discrimination claim.

Talley also claims that the failure to provide him an opportunity to consult with a mental health professional prior to his cell transfer constitutes retaliation under the ADA. To state a claim under the ADA for retaliation, Talley must allege facts showing (1) he engaged in protected activity, (2) he suffered an adverse action after or contemporaneous with the protected activity, and (3) a causal connection between the protected activity and the adverse action. *Fogleman v. Mercy Hosp. Inc.,* 283 F.3d 561, 567-68 (3d Cir. 2002) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997)). Talley appears to allege that the protected activity was his request to consult a mental health professional prior to his transfer and that the adverse action was the use of an extraction team to remove him from the POC by force. However, as the complaint alleges, Mascellino informed Talley that an extraction team would be assembled because he was refusing to leave the POC, not because he had requested a mental health consultation.[28] Thus, because he alleges no causal connection between the protected activity and an adverse action, we shall dismiss Talley's ADA retaliation claim.[29]

*Section 1983 Claims*

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*,

---

[28] *Id.* ¶ 11.

[29] We shall dismiss Talley's First Amendment retaliation claim for this same reason. *See Rauser v. Horn*, 241 F. 3d 330, 333 (3d Cir. 2001) (requiring causal link between constitutionally protected activity and prison official's retaliatory act).

7

487 U.S. 42, 48 (1988). The DOC, as a state agency, is not a "person" under § 1983. *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 847 (3d Cir. 2014). Nor do the facts pled by Talley establish a plausible constitutional violation against any individual defendant.[30]

*Eighth Amendment Claims*

Talley's theory of Eighth Amendment liability[31] is a failure-to-treat claim against Doyle and Ladonne for releasing him from the POC without evaluating his mental state. The Eighth Amendment protection against cruel and unusual punishment extends to a prisoner's right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 102, 103 (1976) (internal citations omitted). Failure to provide adequate medical care violates a prisoner's right to be free from cruel and unusual punishment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Id.* at 104–05.

To state an Eighth Amendment claim arising out of the failure to treat his medical condition, Talley must plead sufficient facts that, if proven, would establish two elements: (1) he had a serious medical need; and (2) prison officials were deliberately indifferent to that need. *Spruill v. Gillis*, 372 F.3d 218, 235-36 (3d Cir. 2004).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834

---

[30] Construing the complaint in the light most favorable to Talley, we assume that although he sues the individual defendants in their official capacity under the ADA, he sues them in their personal capacity under § 1983. A claim for damages against state officials in their official capacity is the same as a claim against the employing entity, but officials sued in their personal capacity are "persons" under § 1983. *Hafer v. Melo*, 502 U.S. 21, 22-23, 25, 27 (1991).

[31] Talley also asserts "failure-to-report and/or calculated harassment" Eighth Amendment claims against RN Paul and the Unknown Extraction Team Defendants. The DOC is unable to identify these defendants and they are not parties to the motion to dismiss.

8

F.2d 326, 347 (3d Cir. 1987). *See also Atkinson v. Taylor,* 316 F.3d 257, 272-73 (3d Cir. 2003). A medical condition is serious when the denial or delay of medical treatment causes "unnecessary or wanton infliction of pain." *Monmouth Cty.*, 834 F.3d at 347.

Deliberate indifference to a serious medical need is shown when: (1) a doctor intentionally inflicts pain on a prisoner; (2) a prison official denies reasonable requests for medical treatment, exposing the inmate to undue suffering or the threat of tangible residual injury; or (3) an official intentionally refuses to provide care even though he is aware of the need for such care. *Spruill,* 372 F.3d at 235. A prison official is deliberately indifferent if he disregards a known excessive risk to the inmate's health and safety. It is not enough that the official is aware of facts from which an inference can be drawn that the inmate is exposed to a substantial risk of serious harm. The official must actually draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

Talley claims Doyle and Ladonne were deliberately indifferent when, without first examining him, they placed him in "the DTU where he could've easily gained access to something to harm himself with from one of the other inmates . . . ."[32] His placement in a DTU cell does not establish deliberate indifference. Although the DTU cell, unlike the POC, was not subject to one-on-one supervision, it was under video surveillance, like the POC.[33] Consequently, prison officials remained capable of monitoring Talley and intervening if he attempted to act on his suicidal ideation. In the DTU cell, Talley was also placed in a waist restraint belt to prevent him from harming himself.[34] After he escaped

---

[32] Comp. ¶ 14.
[33] *Id.* ¶ 12.
[34] *Id.* ¶ 9.

9

from the waist belt, the extraction team placed him in an intermediate restraint belt.[35] That night Talley apparently became free of this belt and attempted to hang himself.[36] But, there is no allegation that he did so with anything obtained from another inmate, even though he cites this as the increased risk caused by his placement in the DTU cell.

At most Talley alleges medical malpractice[37] or a disagreement over his treatment. He believes that he should have remained in the POC or else been examined by a mental health professional prior to his transfer to the DTU cell. Instead, he was transferred to the DTU cell, another camera cell, and placed in a restraint.

Medical malpractice does not amount to a constitutional violation. *Estelle*, 429 U.S. at 105-06; *Monmouth Cty.*, 834 F. 2d at 347. Likewise, disagreement as to proper medical treatment does not establish an Eighth Amendment violation. *Spruill*, 372 F.3d at 235-36.

The prison officials were not deliberately indifferent to Talley's suicidal ideation. Rather, they chose to handle it in a manner other than what he preferred. Thus, we shall dismiss Talley's Eighth Amendment claim.

*Fourteenth Amendment Claims*

The due process analysis starts with determining whether the liberty interest asserted is one that is protected by the Fourteenth Amendment. *Montanez v. Sec'y Dep't of Corr.*, 773 F.3d 472, 482-83 (3d Cir. 2014) (quoting *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 663 (3d Cir. 2011)). If it is a protected interest, we must then determine

---

[35] *Id.* ¶ 16.

[36] *Id.* ¶ 21.

[37] Indeed, he states that his Eighth Amendment claim against Doyle and Ladonne is also one for "medical malpractice/negligence." *Id.* ¶ 26.

10

what process is necessary to protect it. *Newman v. Beard,* 617 F.3d 775, 783 (3d Cir. 2010) (citation omitted). If the interest is not protected, no process is necessary. Thus, at the threshold, the plaintiff must establish that he had a protected liberty interest that triggered due process rights. *See Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (finding that succeeding on a due process claim requires demonstrating that the plaintiff was deprived of a liberty interest).

Prisoners do not enjoy the same liberty interests as ordinary citizens do. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995). Incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (quoting *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977)). "To rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which . . . imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.'" *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 559 (3d Cir. 2017) (quoting *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)) (emphasis in *Griffin*).

Talley appears to assert two Fourteenth Amendment violations, the transfer from the POC to the DTU and his placement in restraints once there. "An inmate does not have a right to be placed in the cell of his choice." *Sheehan v. Beyer*, 51 F.3d 1170, 1174 (3d Cir. 1995) (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to

judicial oversight." *Montayne v. Haymes*, 427 U.S. 236, 242 (1976). Accordingly, Talley has not stated a Fourteenth Amendment claim based on his placement in the DTU.

Talley was placed in a waist restraint belt after he was transferred from the POC to the DTU.[38] He freed himself and was then placed in an intermediate restraint belt.[39] Talley "anticipated" that he would remain in restraints for "24 hrs."[40] Placement in restraints for a short period of time is not an atypical and significant hardship for a prisoner. Courts have repeatedly held that placement in restraints for similar or longer periods does not implicate a liberty interest.[41] *See Key v. McKinney*, 176 F.3d 1083, 1085, 1087 (8th Cir. 1999) (affirming dismissal of procedural due process claim where prisoner was placed in handcuffs chained to leg shackles for 24 hours); *Williams v. Burton*, 943 F.2d 1572, 1574, 1576-77 (11th Cir. 1991) (no procedural due process claim where prisoner was placed in four-point restraints and his mouth taped shut for 28.5 hours), *cert. denied*, 505 U.S. 1208 (1992); *Shand v. Chapdelaine*, No. 17-1947, 2018 WL 279980, at *2-4 (D. Conn. Jan. 3, 2018) (dismissing procedural due process claim where prisoner placed in "handcuffs, leg irons, and a tether chain connecting his hands to his legs" for three days); *Grady v. Holmes*, No. 406-123, 2007 WL 2507395, at *3 (S.D. Ga. Aug. 30, 2007) (placement in restraint chair for 44 hours did not constitute procedural due process violation).

---

[38] Compl. ¶ 12.

[39] *Id.* ¶ 16.

[40] *Id.* ¶ 12. Talley does not plead that he remained in restraints for 24 hours as anticipated. For present purposes, we assume that he did.

[41] Talley describes his Fourteenth Amendment procedural due process claims as one for federal conspiracy as well. Compl. ¶ 28. To state a claim for conspiracy under § 1983, a plaintiff must allege, *inter alia*, that the conspirators deprived him of a constitutional or federally protected right. *Lazaridis v. Wehmer*, 591 F.3d 666, 672 (3d Cir. 2010). Because Talley fails to plead an underlying deprivation of his rights, his conspiracy claim fails. *See id.* at 672.

12

*State Law Claims*

"Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citing *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)); *see also* 28 U.S.C. § 1367(c)(3). No exceptions apply here.

There is no reason to retain jurisdiction over Talley's state law claims. He may assert them in state court. *See, e.g., Segers v. Williams*, No. 13-2413, 2014 WL 285078, at *5 n.9 (E.D. Pa. Jan. 27, 2014). Thus, we shall decline to exercise supplemental jurisdiction.

**Conclusion**

Because Talley failed to state a federal claim, we shall grant the defendants' motion. We decline to exercise supplemental jurisdiction over his state law claims. Therefore, this action will be dismissed with prejudice as to the federal law claims and without prejudice as to the state law claims.